Gretchen L. Staft
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gretchen_staft@fd.org

Counsel for Defendant Lee John Screnock

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | Case No. 3:19-cr-00038-SLG-DMS |
|---|---|
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| vs. | |
| LEE JOHN SCRENOCK, | |
| Defendant. | |

Defendant Lee John Screnock, through counsel, Gretchen L. Staft, Assistant Federal Defender, submits this memorandum in anticipation of his sentencing hearing scheduled for March 10, 2021 at 1:00 p.m. At sentencing, Mr. Screnock will ask the court to impose a probationary term of 24 months, with conditions to include: a letter of apology, 100 hours of community work service, and a prohibition from dealing in wildlife products. Additionally, Mr. Screnock shall forfeit the items seized in this matter, valued at approximately $125,000.

Such a sentence reflects the nature and circumstances of the offense as well as Mr. Screnock's history and characteristics, and is sufficient, but not more than necessary to serve the purposes of sentencing set forth in 18 U.S.C. §3553(a).

//

## I.     ADVISORY GUIDELINE COMPUTATION

The PSR calculates a total offense level of 12, with a corresponding guideline range of 10 to 16 months (Criminal History Category I). Mr. Screnock does not object to the guideline calculation in the technical sense but asks the court to grant a downward variance because the guideline range does not fully implement the statutory objectives of sentencing.

## II.    STATUTORY SENTENCING FACTORS

As a general matter, strict adherence to the sentencing guidelines was struck down in *United States v. Booker*, 543 U.S. 220 (2005). Rather, the guidelines are just one of many factors the court must consider to fashion a sentence that is "sufficient but not greater than necessary" to achieve the sentencing goals enumerated in 18 U.S.C. § 3553(a). *Id*.

While all sentencing proceedings are to begin by determining the applicable guideline range, the District Court may not presume the guideline range is reasonable. *Rita v. United States*, 551 U.S. 338, 352 (2007)(citing *Booker*, 543 U.S. at 259-60). Nor should the guidelines range be given more or less weight than any of the sentencing factors among those set out in 18 U.S.C. § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *Gall v. United States*, 552 U.S. 38, 46 (2007).

In this case, a sentence of 24 months of probation is a fair application of §3553(a) factors, including the advisory sentencing guidelines.

   1)  The Nature and Circumstances of the Offense

Mr. Screnock began operating the art gallery Artic Treasures in the early 2000s. There he honed his own skills as an artist and supported and collaborated with other artists,

particularly Alaska Native artists and those who were homeless or had recently been released from incarceration and were struggling to get back on their feet. He provided artists with space and tools to create their art and provided daily meals and other assistance. *See* Exhibit D-1, Letter from Defendant. During his time running Arctic Treasures, he developed close relationships with many artists in the Native community. One particular master carver bestowed upon Mr. Screnock the nickname "Savuk," which means "worker." Mr. Screnock felt great pride in the receipt of this nickname, and he adopted this signature for his artwork. These carvings were not labeled as having been made by an Alaska Native artist, but he failed to adequately distinguish them, and on two occasions when questioned by undercover officers posing as customers whether Savuk-labeled items were made by a Native artist, Mr. Screnock answered in the affirmative. On another occasion, he sold a polar bear skull, which was tagged, but did not bear artwork. Despite the tag, without artwork, this sale was illegal under the Marine Mammal Protection Act.

It is surprising that a person who has been so committed to uplifting and supporting the Native artist community would make such mistakes. Mr. Screnock's health, memory, and cognition has been deteriorating over recent years, and it is possible that these were contributing factors. Mr. Screnock acknowledges he got "lazy" over the years. PSR ¶ 12a. Regardless of the cause of his mistakes, the result is the same. Mr. Screnock takes full responsibility and bears great shame for his actions and is committed to giving back to the Alaska Native artist community in whatever way possible.

Following the investigation in this case, Mr. Screnock gave up carving as well as the Artic Treasures business. It was incredibly important to Mr. Screnock, however, that any person taking over the business maintain the artist support program he had worked so hard to achieve. Ultimately an Inupiaq artist named Leon Kinneeveauk who shared Mr. Screnock's vision agreed to take over the business and maintain the supportive program for Alaskan artists. Mr. Kinneeveauk took over the business in 2018.

Mr. Kinneeveauk wrote the following letter to the Court describing Mr. Screnock's impact on his life and the lives of many other artists:

> **Dear judge sharen I Gleason**
> My name is Leon kinneeveauk I am Iñupiaq Eskimo from point hope alaska I was released from prison in 2015 with a few hundred dollars and a couple pieces of native art, I took my art down town to the shops and no one would buy my art peices I walked into arctic treasures and was greeted by John screnock I asked if he would look at my art he did and he baught a couple pieces at a fair price and offered me a place to carve to help me get on my feet so I accepted and during my time there he was very generous and helpful in making sure I succeeded as an artist there were other artist carving there. John became a mentor to me as he did the other carvers Johns shop and program gave me hope and a chance at a life as an artist a provider and a person of service. Above all else John gave me the opportunity to purchase his business which was a dream come true I have since built the program to provide space for 20 carvers who struggle with addiction homelessness and reentry from incarceration. johns impact on my life and many others are more than any words can say I know that you can see the affects of his life of service to the down town area by visiting our shop and seeing the program that spawned from his time as owner of arctic treasures
>
>        Thank you for giving me the
>        Opportunity to explain how John has given me hope as he did so many others
>
> Leon kinneeveauk

*United States v. Lee John Screnock*
Case No. 3:19-cr-00038-SLG-DMS                                                                                            Page 4

Case 3:19-cr-00038-SLG   Document 43   Filed 02/25/21   Page 4 of 8

It is hoped that Mr. Screnock's mistakes do not overshadow the good he has also done for the community.

    2) <u>Mr. Screnock's History and Characteristics</u>

Mr. Screnock grew up an orphan in South Korea. From early childhood until his teenage years, he resided an orphanage, where he and other children experienced ongoing abuse and neglect. PSR ¶ 41a. Thankfully, an American couple adopted him at 14 years old, and he was able to start a new life with a loving family. Though the transition he experienced in moving to the United States was daunting, he received tremendous support from his kind and generous family. He learned English and jumped into extracurricular activities, such as soccer, tennis, wrestling, cross-country, and track and field. PSR ¶ 42. He became a United States citizen in 1983.

In his young adulthood, Mr. Screnock spent several years pursuing a degree in Medical Technology, but he eventually left college after the birth of his first child to earn money to provide for his family. PSR ¶ 48. He had previously been to Alaska to commercial fish in the early 1980s and had fallen in love with the state and its people, so he decided to return with his family to make Alaska their home. PSR ¶ 42a.

Although Mr. Screnock loves his family and life in Alaska, things have not always been easy. Two of his three adult sons suffer from autism. One of these sons is nonverbal and has a severe diagnosis requiring residency in a group home. This separation has been incredibly difficult for the family. Another son resides with Mr. Screnock and his wife, where they provide daily care and assistance in developing life and social skills. PSR ¶ 43.

After this case came about, Mr. Screnock stopped carving and gave up the business of Arctic Treasures. This has allowed him to spend more time with his family, but it has also placed them under great financial strain, particularly since the COVID-19 pandemic when he has been unable to collect rent on his property, which was his only remaining source of income. He has been unable to make ends meet in recent times, putting enormous strain on the family. Further, his health has been deteriorating, which is hastened by the tremendous stress of the instant matter. Mr. Screnock has lost a significant amount of weight, lost teeth, and has been experiencing alarming memory loss during the pendency of this case. PSR ¶ 45.

3) <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; to Afford Adequate Deterrence to Criminal Conduct; to Protect the Public from Further Crimes of the Defendant; and to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner</u>

While Mr. Screnock's offenses were unfortunate, when determining the appropriate sentence, the Court should also weigh the good he has done for the community, as well as the wider penalties he will be suffering as the result of his convictions. Mr. Screnock has abandoned his livelihood and passion as the result of this case and feels great shame for the harm he has done to the Native community. In addition to losing his business, he has forfeited $125,000 worth of artwork, which he hopes can be used to benefit the Alaska Native artist community. Although he had a virtually unblemished record, he will now forever be branded a felon. Further, under the terms of the plea agreement, he will also be

required to complete 100 hours of community work service,[1] write a letter of apology, and refrain from dealing in any wildlife products during the term of supervision.

It bears noting that Mr. Screnock has been subject to significant restrictions during the 2-year pendency of the case. The Court should account for this successful term of supervision when determining the appropriate length of supervision to impose as part of the sentence in this matter. Under the circumstances of this case, a 24-month probationary sentence provides just punishment, promotes respect for the law, and provides adequate individual and general deterrence. Additionally, such a sentence is appropriate to protect Mr. Screnock's physical wellbeing, given the current global pandemic as well as his deteriorating health.

### III. CONCLUSION

For the foregoing reasons, a 24-month term of probation is sufficient, but not more than necessary, to meet the purposes of sentencing set forth in 18 U.S.C. §3553(a).

DATED at Anchorage, Alaska this 25th day of February, 2021.

Respectfully submitted,
FEDERAL PUBLIC DEFENDER
DISTRICT OF ALASKA

*/s/ Gretchen L. Staft*
Gretchen L. Staft
Assistant Federal Defender

---

[1] Mr. Screnock intends to continue volunteering to a cause that benefits the Alaska Native artist community beyond the required 100 hours, until his health no longer allows him to do so.

*United States v. Lee John Screnock*
Case No. 3:19-cr-00038-SLG-DMS    Page 7

Case 3:19-cr-00038-SLG   Document 43   Filed 02/25/21   Page 7 of 8

<u>Certificate of Service</u>:

I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on February 25, 2021. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.

*/s/ Gretchen L. Staft*